STATE EX REL. JOHN J. ABEL v. JOHN A. BERG.[1]

April 28, 1916.

Nos. 19,903—(256).

**Clerk of district court — term of office.**

1. By the Constitution the office of clerk of the district court is elective, the term is for four years, it commences and terminates on the first Monday in January, and upon its termination there is a vacancy and not a right in the incumbent to hold over.

[1]Reported in 157 N. W. 652.

Note.—On the power to extend term by postponing time for election, see notes in 3 L.R.A.(N.S.) 887; L.R.A. 1915 C, 378.

On the purpose and effect of a provision that incumbent shall hold his office until his successor is elected and qualified, see note in 50 L.R.A. (N.S.) 368.

**Same — statutory extension of term unconstitutional.**

2. The term cannot be extended by the legislature; and the statute, (Laws 1915, c. 168), which in effect provides that there shall be no election in 1916 of successors to clerks who were elected in 1912 for terms commencing on the first Monday in January, 1913, and terminating on the first Monday in January, 1917; that such clerks shall continue in office until the first Monday in January, 1919, and that their successors shall be elected in November, 1918, constitutes an extension of the four-year term and is unconstitutional as respects the office of clerk.

**Same — statute unconstitutional.**

3. Under the Constitution providing that the clerk shall be elected; that his term of office shall be four years; that the official year shall commence on the first Monday in January; that all terms of office shall terminate at that time; that the general election shall be held on the first Tuesday after the first Monday in November, commencing with the year 1884; that thereafter elections shall be biennial, and that the county officers shall be elected at the general election, the legislature cannot provide that at the general election in 1916 successors of the clerks who were elected in 1912, and whose terms expire in January, 1917, shall not be elected, but that they shall be elected in 1918, and thereby create a vacancy commencing in January, 1917, to be filled by appointment; and Laws 1915, c. 168, construed as intending to create such vacancy, is unconstitutional.

Proceedings in this court under section 357, G. S. 1913, to compel the county auditor of Wright county to accept the filing of relator as candidate for the office of clerk of the district court. Relator demurred to the answer of respondent. Peremptory order directed.

*W. H. Cutting and J. J. Wooley,* for relator.
*S. A. Johnson, Latham & Pidgeon and W. K. Platner,* for respondent.
*Clyde R. White, amicus curiae,* on the brief of respondent.

DIBELL, C.

Statutory proceeding, original in this court, under G. S. 1913, § 357 (R. L. 1905, § 202), to compel the respondent, the county auditor of Wright county, to accept the filing of the relator as a candidate for the office of clerk of the district court at the June, 1916, primary. An alternative order was issued, the respondent answered, and the relator demurred. The proceeding is submitted upon the pleadings.

The incumbent of the office of clerk was elected in November, 1912, for the constitutional term of four years, commencing on the first Monday in January, 1913, and terminating on the first Monday in January, 1917. The relator is a qualified elector of the county and is entitled to have his name on the primary ballot, if the successor of the clerk is to be elected at the November, 1916, general election. The determination of the ultimate question involves the consideration of several constitutional and statutory provisions to which attention is now directed.

The provision of the Constitution (article 6, § 13), relative to the elective character and term of office of the clerk is as follows:

"There shall be elected in each county, where a district court shall be held, one clerk of said court, whose qualifications, duties, and compensation shall be prescribed by law, and whose term of office shall be four years."

The provision of the Constitution (article 7, § 9), relative to the official year, terms of office and general elections, is as follows:

"The official year for the state of Minnesota shall commence on the first Monday in January in each year, and all terms of office shall terminate at that time; and the general election shall be held on the first Tuesday after the first Monday in November. The first general election for state and county officers, except judicial officers, after the adoption of this amendment, shall be held in the year 1884, and thereafter the general election shall be held biennially. All state, county or other officers elected at any general election, whose terms of office would otherwise expire on the first Monday of January, 1886, shall hold and continue in such offices, respectively, until the first Monday in January, 1887."

The provision of the Constitution (article 11, § 4), relative to the election of county officers, is as follows:

"Provision shall be made by law for the election of such county or township officers as may be necessary."

By Laws 1915, p. 233, c. 168, amending Laws 1913, p. 668, § 458, it is provided in effect that there shall be no election of clerks in 1916; that there shall be an election in 1918 for a four-year term, commencing on the first Monday in January, 1919; that those clerks whose terms expire on the first Monday in January, 1917, shall continue in office until the first Monday in January, 1919; that any appointment to fill a

vacancy shall be for the unexpired portion of the term, and that all appointments shall be made by the county board instead of by the judges as theretofore. This act is as follows:

"Section 1. In every county in this state there shall be elected at the general election in 1918 a county auditor, county treasurer, sheriff, register of deeds, county attorney, clerk of the district court, court commissioner, coroner, county surveyor and county superintendent of schools.

"Sec. 2 The terms of office of the said county officers shall be four (4) years and until their successors are elected and qualified, and shall begin on the first Monday in January next succeeding said election, and said offices shall be filled by election every four (4) years thereafter.

"Sec. 3. Any person now holding any one of the said offices, whether by election or appointment, shall continue in such office until the first Monday in January, A. D. 1919, and any appointment made to fill a vacancy in any of the said offices shall be for the balance of such entire term. All appointments under the provisions of this act shall be made by the county board."

1. The Constitution definitely provides that the office of clerk shall be elective and definitely fixes the term at four years. Const. art. 6, § 13. The term commences on the first Monday in January of an odd-numbered year and terminates on the first Monday in January four years later, and there is a biennial election at which county officers are elected in November of each even-numbered year. Const. art. 7, § 9. There is no hold-over privilege attached to the term and upon the expiration of the four-year period there is a vacancy. State v. O'Leary, 64 Minn. 207, 66 N. W. 264.

2. The constitutional term cannot be abridged by the legislature. In O'Leary v. Steward, 46 Minn. 126, 48 N. W. 603, the facts, condensed to the utmost, were these: The respondent, incumbent of the office of clerk, was elected in 1883 for the four-year term, commencing in January, 1884, and ending in January, 1888. In 1883 an amendment was added to the Constitution providing that elections should be biennial; that they should be held in November of even-numbered years commencing with November, 1884, and that thereafter they should be biennial. Const. art. 7, § 9. Prior to this amendment there was no constitutional provision as to the time of elections, and none fixing the time of the

commencement of the official year, and by statute elections were annual. G. S. 1878, c. 1, § 1. After the amendment of the Constitution the statute was changed so as to conform to it. Laws 1885, p. 40, c. 30 (G. S. 1913, § 298, R. L. 1905, § 153). The result of the constitutional amendment was that there was no election in 1887. The respondent was re-elected in 1886. In 1890 the relator was elected. He claimed the right to take office on the first Monday in January, 1891, by virtue of Laws 1885, p. 41, c. 30, § 3 (G. S. 1913, § 300, R. L. 1905, § 155), which provides as follows:

"The regular term of office of all state and county officers shall commence on the first Monday in January next suceeding their election, except as otherwise provided by law."

If this statute were given effect the relator's contention was sound and he was entitled to take office in 1891; and in considering this contention the court said. "This might be so if the legislature had power to change the term of office fixed in the Constitution, which it has not." The effect of this holding was that the respondent continued in office until January, 1892, when the relator's term commenced, and that the respondent's constitutional four year term was not shortened by the statute. That the legislature can not abridge the constitutional term is beyond question. That it can not extend it is equally clear. The principle is illustrated by State v. Windom, 131 Minn. 401, 155 N. W. 629. There it was held that a statute, the effect of which was to extend the term of a municipal judge, then holding office, beyond a period of seven years, which was the longest period the Constitution (article 6, § 9), authorized the legislature to prescribe, by continuing him in office beyond such period, was invalid. Upon this point there was a unanimity of opinion among the justices.

It is argued that the statute does not extend the term; that it only works a postponement of the election. Sections 1 and 2 provide for an election in 1918 and fix the term at four years commencing with the first Monday in January 1919. Section 3 provides that "any person now holding any one of the said offices * * * shall continue in such office until the first Monday in January, A. D. 1919." This applies to those who were elected in November, 1912, whose terms of office commenced in January, 1913, and will terminate in January, 1917, with no right of

holding over. That the effect of section 3 is to extend the four-year term does not admit of doubt. No refinement of reasoning permits a different result. No vacancy is created. The incumbent, whose right to the office expires in 1917, is continued in office for two years additional by legislative declaration. The statute extends the term and in doing so it is unconstitutional.

3. But it is urged that though the statute extends the term, and though insofar as it does so it is unconstitutional, section 3 which alone brings this result should be rejected as unconstitutional and sections 1 and 2 should be given effect.

In considering sections 1 and 2, with the concession that section 3 is unconstitutional, we assume, though it is not necessary that we decide, that section 3 is not so connected with the subject matter of the statute and so dependent upon other parts of it that it should be presumed that the legislature would not have passed the other parts without it. 3 Dunnell, Minn. Dig. § 8936. If the statute be construed as intending to postpone the election of clerks from 1916 to 1918, and if it is valid legislation, the clerks whose terms expire in January, 1917, will not hold until January, 1919, but in January, 1917, there will be vacancies to be filled by appointment by the district judges and the appointees will hold until January, 1919, when those elected in 1918 will take office.

It has been held that the legislature may make reasonable changes in respect of the time for holding the election of officers whose terms are fixed by the legislature and that the incumbents at the time, if a hold-over provision is attached to their terms, will continue in office. The change must not be such as substantially to deprive the office of its elective character, if it is given an elective character by the Constitution. Thus in Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778, the court held that the legislature might postpone for two years the time for holding the election of the judges of the municipal court of Minneapolis, and that the incumbents would continue in office under the hold-over provision of the statute under which they were elected. In this case the period for which the municipal judges would hold was six years, and this did not exceed the period of seven years fixed by section 9 of article 7 of the Constitution as a permissible term for the judicial officers; nor was the change thought to affect the elective character of the offices as declared

by the same section of the Constitution. Again, in Spencer v. Griffith, 74 Minn. 55, 76 N. W. 1018, it was held that the legislature in creating a new county and providing for the appointment of a board of county commissioners might provide that the first board should hold for the period of four years, which would result in passing one election without the selection of their successors, without offending section 4 of article 11 of the Constitution providing for the election of county officers. And see State v. Benedict, 15 Minn. 153 (198). This principle was recognized in State v. Windom, 131 Minn. 401, 155 N. W. 629. Reliance is placed by the respondent upon State v. O'Leary, 64 Minn. 207, 66 N. W. 264. The respondent in that case was elected clerk in November, 1890, for the four-year term commencing in January, 1892, and ending in January, 1896. See O'Leary v. Steward, 46 Minn. 126, 48 N. W. 603, considered in the preceding paragraph. No successor was elected in 1894 and the respondent claimed the right to hold over. Laws 1891, p. 120, c. 39 (G. S. 1894, §§ 866, 867), provided as follows:

"Section 1. That in all counties in this state in which the terms of office of clerks of the district court will expire on the first (1st) Monday in January, A. D. eighteen hundred and ninety-six (1896), the successors thereto shall be elected at the general election to be held in November A. D. eighteen hundred and ninety-six (1896).

Sec. 2. That when vacancies shall occur in said offices under the provisions of section one (1) of this act, said offices shall be filled as now provided by law."

We may assume that it was because of this statute that no election was held in 1894. No question was made upon the right of anyone to file for the office in 1894, for no one filed. If some one had filed the question which we now have might have been presented. There being no election in 1894, and there being no hold-over provision in the Constitution fixing the term of the office of the clerk, there was a vacancy on the first Monday in January, 1896. The vacancy was to be filled at the November, 1896, election. It has been the general construction of the Constitution throughout that a vacancy in the office of the clerk is to be filled by election at the next general election. In referring to the situation presented and to the act of 1891 quoted, the court said: "The purpose of these two sections is plain. It was the intention of the law-

makers to do away with existing conditions in respect to the office of clerk of the district court in some of the counties of the state, the result of the change from the annual to the biennial system of elections. * * * By postponing the election of clerks of the district court in a large number of counties where their terms, as fixed by the Constitution, expired in 1896, from the general election held in November, 1894, until that held in 1896, the election laws of the state would be made more symmetrical in that they would abolish, and for all time end, the necessary, but unfortunate and undesirable, practice of electing these clerks about 14 months prior to the day on which their terms of office would commence. This was the primary object in the enactment of section 866." The syllabus so far as here important is as follows: "The effect of Laws 1891, c. 39, §§ 1, 2 (G. S. 1894, §§ 866, 867), was to create vacancies in the office of clerk of the district court, in all of the counties affected by the act, on the first Monday in January, 1896 * * *."

If the language quoted had been used when the constitutionality of the statute was before the court for consideration, it would have been a direct decision in support of the power of the legislature to postpone an election to fill an office which was created and the term fixed by the Constitution; but no constitutional question was before the court. A constitutional question could not have been presented unless someone had attempted at the November, 1894, election to be a candidate for clerk of the district court for the term commencing in January, 1896. There having been no election in 1894 there was of necessity a vacancy on the first Monday in January, 1896. It required no statute to bring this result. It came because there was no election and no hold-over provision attached to the office. There would have been just as much a vacancy if the 1891 act had not been passed; and, while the court refers to the act as causing a vacancy, it is clear that the question of the constitutionality of a postponement of an election for office of clerk of the court was not present in the mind of the court. The court had before it exactly the situation that there would have been had there been no statute. This case, therefore, decides nothing other than that, upon a failure to elect a successor to a clerk, there is a vacancy to be filled by appointment and no right of holding over.

We are unable to accept respondent's contention that the legislature may postpone the election of the clerk over a general election, though the purpose be to adjust the terms of county offices so that elections thereto may come as nearly as possible in the same year, when the Constitution makes the office elective, fixes the term, and designates a general election which must be passed if the statute is given effect. The Constitution provides that "there shall be elected in each county, where a district court shall be held, one clerk of said court * * * whose term of office shall be four years." It is provided that "the official year * * * shall commence on the first Monday in January in each year, and all terms of office shall terminate at that time; and the general election shall be held on the first Tuesday after the first Monday in November. The first general election for state and county officers, except judicial officers, * * * shall be held in the year 1884, and thereafter the general election shall be held biennially." The Constitution makes the office elective, fixes the term, and provides a *biennial election* at which the successor of an incumbent shall be elected. It is complete. It works. If the Constitution is let alone there is an election of clerks in 1916. If there is not an election it is because the statute of 1915 interrupts the working of the Constitution; or, to put it short, it is because the election fixed by the Constitution for the office which it creates and the term of which it fixes is postponed by the statute. We hold that the statute must yield to the Constitution and not the Constitution to the statute; and that Laws 1915, p. 233, c. 168, if construed as intending to create a vacancy, is unconstitutional.

It may be doubted whether the purpose intended by the statute, however beneficial it may be, can be accomplished by legislation. Perhaps the only method of accomplishing it is by a constitutional amendment. The constitutional amendment of 1883 was framed to accomplish a purpose in part similar to that which the statute seeks to accomplish. Const. art. 7, § 9.

Nothing said in this opinion should be taken to be an intimation as to the validity of Laws 1913, p. 668, c. 458, which the 1915 statute under consideration amends, fixing the terms of county officers in general, nor to affect the 1915 statute except in respect of clerks of court. The

1913 statute is not before us nor is any office considered except that of clerk.

Let a peremptory order issue.

HOLT, J. (Dissenting.)

I concur in the first and second divisions of the opinion; but hold the contentions of respondent, as stated in the third division by my brother Dibell, sound, and therefore do not agree to the conclusion that a peremptory order should issue. The only offices so affected by constitutional inhibitions that the legislature is powerless to arrange for a uniform time of election are those of judges of the supreme and district courts.