Turner, J.
 

 Owing to .the emergency nature of this action the court has consented to consider the petition, motions and answers at the same time. The motions question the jurisdiction of this court for the reason that the petition contains no allegation “that any express or distinct demand was made by the relator upon the defendants, or any of them.”
 

 • Defendants rely for the support of their motions upon 25 Ohio Jurisprudence, 1001, Section 27. How
 
 *164
 
 ever, it is to be noted that in this same section it is stated:
 

 “In this connection, a distinction is made between duties of a public nature, which affect the public at large, and duties of a merely private nature, which affect only the right of individuals. According to the better-view, where the duty sought to be enforced is one owing- to the public generally, no demand for performance is requisite to place the respondent in default, as a prerequisite to mandamus to compel the performance of the duty; in such cases the law itself stands in lieu.of a demand, and the omission to perform the required' duty, in place of a refusal.”
 

 The motions of respondents are therefore overruled.
 

 In the answer of respondent Wetecamp it is alleged:
 

 “Defendant alleges that subsequent to the issuance of said letter by the Secretary of State under date of^ September 15, 1944, the Common Pleas Court of Montgomery county, Ohio, entered its final order enjoining the Board of Elections of Montgomery county, Ohio, from printing special ‘write-in’ ballots for the unexpired term of Elmer F. Tinnerman, deceased, as county commissioner, for the reason that said ballots could not be issued and distributed in accordance with Am. Sub. [sic] S. B. 284 of the laws of the state of Ohio, which said order is in full force and effect.” The board’s answer contains the additional allegation that the injunction was asked to prevent the expenditure of public funds for the purpose.
 

 This same defense was urged in oral argument in behalf of all respondents. Owing to the necessity for a prompt decision in this matter we shall not pass upon the foregoing question for two reasons: (A) The present record is insufficient to determine the question of the jurisdiction of the Common Pleas Court; and (B) it will be our holding that the petition does not
 
 *165
 
 state facts sufficient to justify the issuance of a peremptory writ of mandamus.
 

 Section 12283, General Code, provides in part as follows:
 

 “Mandamus is a writ issued, in the name of the state, * * * commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.”
 

 Relator seeks a peremptory writ to compel the members of the boarfi of elections and its clerk to obey the order of the Secretary of State “ as to the printing of a separate ballot * * * for the general election to be held .Tuesday, November 7, 1944, containing a space for the write-in candidate for both major political parties for the unexpired term of Elmer F. Tinnerman, deceased, for county commissioner.”
 

 The duties of the board of elections are prescribed by statute and unless we can find some statutory authority for the foregoing relief a peremptory writ must be denied.
 

 Section 4785-8, General Code, provides in part:
 

 “There shall be in each county of the state, a board of elections consisting of four qualified electors of the county, who shall be appointed by the Secretary of State, as representatives of the Secretary of State, to serve for the term of four years and until their successors have been appointed and have qualified.”
 

 The duties of a board of elections are prescribed by Section 4785-13, General Code, which provides in part as follows:
 

 “The boards of elections within their respective jurisdictions by a majority vote shall exercise, in the manner herein provided, all powers granted to such boards in this act, and shall perform all the duties imposed by law which shall include the following:'* * *
 

 “f. To advertise and contract for the printing of all ballots, and other supplies used in registrations and elections. * * *
 

 
 *166
 
 “p. To perform such other duties as may be prescribed by law or the rules of the chief election officer.
 

 “In
 
 all cases of a tie vote or a disagreement in the board, if no decision can be arrived at, the clerk shall submit the matter in controversy to the Secretary of State, who shall summarily decide the question and his decision shall be final.”
 

 Section 4785-6, General Code, provides in part as follows:
 

 “The Secretary of State, by virtue of his office, shall be the chief election office of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in this, act. ’ ’
 

 Section 4785-7, General Code, provides:
 

 “It shall be the duty of the Secretary of State to appoint, in the manner provided by law, all members of boards of elections, to advise with members of such boards as to the proper methods of conducting elections; * * * to determine, in the manner provided by law, the forms of ballots
 
 *
 
 * *.”
 

 It needs no citation of authority to demonstrate that the orders of the Secretary of State which are to be obeyed must be lawful orders finding their support in some section or sections of the General Code.
 

 Section 2 of Article XVII of the Constitution provides in part: “All vacancies in other [than state] elective offices shall be filled for the unexpired term in such manner as may be prescribed by law.”
 

 Section 2397, General Code, provides:
 

 “If a vacancy in the office of commissioner occurs more than thirty days before the next election for state and county officers, a successor shall be elected thereat. If a vacancy occurs more than thirty days before such election, or within that time, and the interest of the county requires that the vacancy be filled before the election, the probate judge, auditor, and recorder of
 
 *167
 
 the county, or a majority of them, shall appoint a commissioner, who shall hold his office until his successor is elected and qualified.”
 

 The foregoing section does not prescribe how the name of a candidate may be placed upon the ballot or how a ballot may be prepared where there is no avowed candidate. This court may not legislate.
 

 An examination of the Code discloses that the names of candidates may be placed upon the ballot only after a successful nomination in a party primary, or by petition, or by the filling of a vacancy by a party central committee, or by a committee named in an independent candidate’s petition.
 

 By Amended Senate Bill No. 284 passed by the General Assembly April 27, 1944, and filed in the office of the Secretary of State, April 28, 1944, a method was provided in Section 5 thereof for the nomination of a person to fill a vacancy in an elective office where the death occurred between the 10th day of March and prior to the 20th day of July, 1944. This section reads in part as follows:
 

 “If a’person holding an elective office shall have died subsequent to the tenth day of March, 1944, and prior to .the twentieth day of July, 1944, and if, under the laws of Ohio, a person may be elected at the general election to be held on the seventh day of November, 1944, to fill the unexpired term of the person who shall have died, the appropriate committee of each political party, acting as in the case of a vacancy in a party nomination as in the first three paragraphs of this section provided for, may select a person as the candidate of its party for election for such unexpired term at the general election to be held on the seventh day of November, 1944, and certify his name, and thereupon- such name shall be printed as such candidate under proper titles and in the proper place on the party column ballots used at such general election. ’ ’
 

 
 *168
 
 Section 6 of Amended Senate Bill No. 284 provides:
 

 “The Secretary of State shall, oh the twenty-fifth day of July, 1944, certify to the board of elections of each county in the state the forms of the official ballots to be used at the general election to be held on the seventh day of November, 1944 * *
 

 The only authority for the amendment of such certificate for the November 1944 general election is contained in the further provision of Section 6 as follows:
 

 “If, after the twenty-fifth day of July, 1944, and before the twenty-ninth day of October, 1944, a certificate should be filed with the Secretary of State to fill a vacancy caused by the death of a candidate, as in section 5 of this act provided for, the Secretary of State shall forthwith make a supplemental certification to the board of elections of each county in the state amending and correcting his original certification provided for in the first paragraph of this section. * * *”
 

 Section 5 above referred to pertains only to a vacancy in the party nomination, or in the
 
 nomination
 
 by petition, or to the death of a person holding an elective office. In the latter event the nomination may be made only by a party central committee and for a vacancy occurring by death between March 10, 1944, and prior to July 20, 1944. So far as the record discloses no such nomination was made. Even if such nomination had been made, we know of no provision requiring blank spaces on the ballot to be used for the election of candidates at the November 1944 general election. It is true that Section 7 of Amended Senate Bill No. 284 does require that in addition to the names of the candidates, all ballots shall contain spaces,
 
 as required by laiv,
 
 for writing in other names. The only requirement for blank spaces on ballots is contained in Section 4785-80 and Section 4785-98, General Code, neither of which sections is helpful here. Besides Section 4785-98, General Code, has been suspended for the November 1944
 
 *169
 
 general election by Amended Senate Bill No. 284. Section 4785-80, General Code, applies only to primary ballots. Whether Section 4785-98, General Code, is similarly limited in this respect need not be determined here, suffice it to point out that its provision as to blank spaces is limited to such as are “herein required.” Section 4785-99, General Code, specifically provides the contents of ballots to be used at general elections and there is no provision made therein for blank spaces. See, also, Sections 4785-100, 4785-105 and 4785-109. Section 4785-105, General Code, was also suspended by Amended Senate Bill No. 284.
 

 However, paragraph 6 of Section 4785-131, General Code, does provide:
 

 “If the elector desires to vote for a person whose name does not appear on the ticket, he can substitute the name by writing it in black lead pencil in the proper place, and making a cross mark in the blank space at the left of the name so written.”
 

 We do not see how this provision can be stretched to authorize the use of a separate ballot with the name of no candidate on it but containing the name of the office to be filled and blank
 
 party columns.
 
 It is to be remembered that the provisions of Section 4785-98, General Code, do not apply to the November 1944 election.
 

 The General Assembly has made provision for filling a vacancy occurring prior to July 20, 1944, but no such provision has been made for filling a vacancy caused by the death of an official occurring subsequent to the 20th day of July, 1944. Such situation calls for the application of the rule of
 
 expressio umius est ex-clusio alterius.
 

 The legislative theory underlying the preparation of ballots contemplates that the printing of a ballot is based upon the fact that some specific person or persons has or have been nominated for the office and are candidates for a specific office at the general election.
 

 
 *170
 
 We are unable to find.any provision for the printing of a blank ballot except under Section 4785-87 of the General Code pertaining only to primary elections. This section provides:
 

 “In case of any office for which nominations are sought to be made at any primary election, and for which no declarations of candidacy have been filed within the time prescribed by .law, the board shall provide on the primary ballot space for writing in names. # * # ? 5
 

 There is no similar provision applicable to general elections. The Secretary of State is without authority to order the preparation or use of a ballot not authorized by the Code. ■
 

 The only provision in the General Code for an analogous separate ballot is to be found in Section 4785-104, which applies only in case it is found impracticable to place the names of candidates for any office of a
 
 minor
 
 subdivision in the county on the ballot, in which event a separate ballot may be prepared and separate ballot boxes provided.
 

 As the law has not specially enjoined a duty upon the board of elections of preparing or using the form of the separate ballot directed by the Secretary of State, a peremptory writ of mandamus is denied and this cause is. dismissed at the cost of relator.
 

 Writ denied.
 

 Weygandt, C. J., Matthias and Zimmerman, JJ., concur.
 

 Hart, Bell and Williams, JJ., dissent.